IN THE UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

**Tracey Karrick,**

      **Plaintiff,**

v.                                             Case No. 17-cv-2225-JWL

**Unified Government of Wyandotte
County/Kansas City, Kansas,**

      **Defendant.**

## MEMORANDUM & ORDER

Plaintiff Tracey Karrick filed this lawsuit against defendant, her former employer, asserting that defendant discriminated against her on the basis of gender in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and the Equal Pay Act, 29 U.S.C. § 206(d)(1), and that it discriminated against her on the basis of age in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. Plaintiff also asserts that defendant retaliated against her in violation of Title VII. This matter is presently before the court on defendant's motion for summary judgment on all claims (doc. 72). As explained below, the motion is denied in its entirety.

**I.    Facts**

The following facts are uncontroverted, stipulated in the pretrial order, or related in the light most favorable to plaintiff as the nonmoving party. The Board of Public Utilities ("BPU") is a public utility that provides potable water and electrical services to its customers. It is an

administrative agency of the defendant Unified Government of Wyandotte County/Kansas City, Kansas. As a municipal utility, the BPU has its own Department of Fleet Maintenance that coordinates the vehicle maintenance of BPU's company vehicles and trucks. The Department of Fleet Maintenance is located in two garages—the "Service Center Garage," which is the main garage for electrical repair work, and "Muncie."

In August 2007, defendant promoted plaintiff (who was first hired by defendant in May 1986) from Supervisor of Vehicle Maintenance to Superintendent of Transportation. Her title subsequently changed from Superintendent of Transportation to Superintendent of Fleet Maintenance. As the Superintendent of Fleet Maintenance, plaintiff was responsible for ensuring proper and reliable transportation, suitably equipped at the least cost, with adequate controls to provide proper fleet administration. Plaintiff was also responsible for keeping accurate records relating to inventory. In this position, plaintiff reported to Bill Johnson, the Manager of Electric Operations and Technology. Beginning in early 2015, plaintiff began voicing concerns to Mr. Johnson about her compensation as a Superintendent as compared to the compensation received by male BPU Superintendents. On February 2, 2015, plaintiff and Mr. Johnson met for more than one hour to discuss her salary concerns as well as concerns relating to Mr. Johnson's treatment of plaintiff as compared to her male counterparts with respect to company phones, compensatory time off and the use of company vehicles.

On Tuesday, May 17, 2016, plaintiff was attempting to leave the Service Center Garage to attend a wake around 4pm. When plaintiff's personal vehicle would not start, she asked another employee, Chris Park, to "jump start" her car, which allowed plaintiff to drive her vehicle. Mr. Park advised plaintiff that he believed that the BPU's storeroom had a battery that would fit in her

vehicle. After leaving the wake, plaintiff called Mr. Park at the Service Center Garage, who confirmed that the garage had a battery in stock that would fit in her vehicle. Plaintiff asked Mr. Park whether he would install the battery for her and advised him that she would pay for the battery the following day. Mr. Park agreed to do so and plaintiff returned to the garage. Mr. Park installed the battery in plaintiff's vehicle and plaintiff again advised him that she would pay for the battery the next day.

At that time, Factory Motor Parts ("FMP") was the exclusive supplier of car batteries to the BPU. After the installation of the battery in plaintiff's vehicle, plaintiff had a discussion with FMP's battery representative, Mike Olson, about the cost of the battery. Ultimately, Mr. Olson agreed to sell the battery to plaintiff at FMP's cost and indicated that he would need to invoice the BPU for the battery to secure that pricing for plaintiff. Accordingly, on May 24, 2016, FMP generated an invoice to the BPU for the car battery that was installed in plaintiff's vehicle. Plaintiff told Mr. Olson that she would pay the invoice personally. As of May 31, 2016, plaintiff had not yet paid the invoice. The parties dispute when plaintiff actually obtained the invoice and who provided the invoice to her, but those facts are not critical to the disposition of the motion.

On June 1, 2016, a grievance meeting was held concerning disciplinary action taken by plaintiff against one of her subordinates. The meeting was attended by plaintiff; Bill Johnson; the subordinate who was challenging the action; a union representative; Jason McVay, the Fleet Maintenance Supervisor; and Sam DeLeon, BPU's Human Resources Director. During this meeting, Mr. Johnson became aware that Mr. Park, on BPU time, had installed a battery from the BPU's inventory into plaintiff's personal vehicle. It is unclear whether Mr. Johnson knew at this time that plaintiff had not yet paid the invoice for the battery. In any event, immediately after the

grievance meeting, plaintiff called Sara Bryant, the Lead Garage Clerk, and told her that she needed the invoice to pay for the battery. Ms. Bryant located the invoice, provided it to plaintiff and advised her to call FMP representative Donna Brammer with her credit card number. The record reflects that plaintiff called FMP on June 1, 2016 at 3pm and that she left a message for Ms. Brammer. Plaintiff's evidence reflects that she then returned the invoice to Ms. Bryant and asked Ms. Bryant to contact Ms. Brammer and to pay the invoice with plaintiff's credit card information. Ms. Bryant did not note any attempt to call FMP until June 7, 2016, when she left a message for Ms. Brammer and returned the invoice to plaintiff.

By June 9, 2016, the human resources department had initiated an internal investigation into the installation of the battery into plaintiff's vehicle. Mr. DeLeon assigned Judy Woodruff, one of the department's Compliance Coordinators, to investigate plaintiff's conduct. On the morning of June 9, 2016, Ms. Woodruff contacted FMP and learned from Ms. Brammer that plaintiff's invoice remained unpaid. Ms. Woodruff then contacted plaintiff to schedule a meeting for later that afternoon. Before that meeting took place, Ms. Bryant successfully contacted Ms. Brammer and paid plaintiff's invoice with plaintiff's credit card number. Later that day, plaintiff met with Mr. DeLeon, Mr. Johnson and Ms. Woodruff to discuss plaintiff's removal of BPU property from the storeroom for personal use. At the end of the meeting, plaintiff was placed on administrative suspension with pay pending the investigation. Over the next several weeks, Ms. Woodruff interviewed numerous BPU employees about the incident. At the end of her lengthy investigative report, Ms. Woodruff concluded that an unwritten procedure exists within the BPU that permits employees to purchase merchandise from the BPU warehouse or BPU vendors but that the employee is required to pay for the merchandise at the time of the order or at the time the

merchandise is picked up. Ms. Woodruff concluded that plaintiff violated this unwritten policy by paying for the battery at a later date and that plaintiff should not have asked a BPU employee to install the battery in her personal vehicle while on BPU time. Ms. Woodruff's investigation also uncovered that plaintiff, in June 2014, had been in an accident in her company vehicle and, in violation of company policy, had never reported the accident. Plaintiff's evidence, however, reflects that the "accident" did not result in any damage to the company vehicle and, accordingly, did not require completion of an accident report.

On July 25, 2016, Bill Johnson issued a "Conduct Memorandum" to plaintiff. A Conduct Memorandum is the BPU's response to an employee's violation of a company rule or policy. In the Conduct Memorandum, Mr. Johnson explained that he was recommending the termination of plaintiff's employment based on two rule violations—theft of BPU property and "failure to report the unsafe operation and incident of a vehicle on Company business." The following day, Mr. DeLeon sent plaintiff a letter informing her of the BPU's determination that she had violated two rules and that her employment had been terminated effective July 26, 2016. Since plaintiff's termination, Jason McVay has served as the Acting Superintendent of Fleet Maintenance and is receiving "step up" pay for those additional responsibilities. Mr. McVay is substantially younger than plaintiff, who was nearing eligibility for full retirement.

Additional facts will be provided as they relate to the specific arguments raised by the parties in their submissions.

## II. Summary Judgment Standard

5

"Summary judgment is appropriate if the pleadings, depositions, other discovery materials, and affidavits demonstrate the absence of a genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Water Pik, Inc. v. Med–Systems, Inc.*, 726 F.3d 1136, 1143 (10th Cir. 2013) (quotation omitted); *see* Fed. R. Civ. P. 56(a).  A factual issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Water Pik, Inc.*, 726 F.3d at 1143 (quotation omitted).  "The nonmoving party is entitled to all reasonable inferences from the record; but if the nonmovant bears the burden of persuasion on a claim at trial, summary judgment may be warranted if the movant points out a lack of evidence to support an essential element of that claim and the nonmovant cannot identify specific facts that would create a genuine issue." *Id.* at 1143-44.

## III.  Gender and Age Discrimination

In the pretrial order, plaintiff contends that defendant discriminated against her on the basis of gender and age in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq.[1]  As plaintiff has no direct evidence of discrimination, her claims are analyzed using the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Daniels v. United Parcel Serv., Inc.*, 701 F.3d 620, 627 (10th Cir. 2012).  Under *McDonnell Douglas*, plaintiff has the initial burden of establishing a prima facie case of discrimination.  *Id.*  To set forth a prima facie case of discrimination, plaintiff must establish "(1) membership in a protected class and (2)

---

[1] Plaintiff also asserts a gender discrimination claim under the Equal Pay Act, which the court addresses separately.

an adverse employment action (3) that took place under circumstances giving rise to an inference of discrimination." *Id*. (citing *EEOC v. PVNF, LLC*, 487 F.3d 790, 800 (10th Cir. 2007)). If she establishes a prima facie case, the burden shifts to defendant to assert a legitimate, nondiscriminatory reason for the adverse employment action. *Id*. If defendant meets this burden, summary judgment against plaintiff is warranted unless she introduces evidence "that the stated nondiscriminatory reason is merely a pretext for discriminatory intent." *Id*. (citing *Simmons v. Sykes Enters*., 647 F.3d 943, 947 (10th Cir. 2011)).

*A.    Plaintiff's Prima Facie Case*

In its motion for summary judgment, defendant concedes that plaintiff has established a prima facie case of gender discrimination but contends that plaintiff cannot establish a prima facie case of age discrimination. According to defendant, plaintiff must establish as part of her prima facie case of age discrimination that she was performing satisfactory work at the time of her termination and that she was replaced by a younger employee. Defendant then contends that plaintiff cannot establish a prima facie case because plaintiff's termination for theft necessarily means that plaintiff was not performing satisfactory work and her position was never filled.

The court rejects defendant's arguments. First, plaintiff is not necessarily required to establish that she was performing satisfactory work or that she was replaced as part of her prima facie case. *See Bennett v. Windstream Communications, Inc*., 792 F.3d 1261, 1266 (10th Cir. 2015) (plaintiff must show only that adverse action occurred under circumstances giving rise to an inference of discrimination). In any event, because defendant contends that it terminated plaintiff's employment for theft, the court will not consider at the prima facie stage whether the

7

alleged theft rendered plaintiff's work unsatisfactory. *See, e.g., EEOC v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1192–94 (10th Cir. 2000) (requiring plaintiff to disprove defendant's proffered reason for employment decision to establish prima facie case would inappropriately short circuit *McDonnell Douglas* analysis). Finally, plaintiff's evidence demonstrates that Jason McVay, a younger employee, assumed plaintiff's responsibilities (if not her official title) immediately after the termination of plaintiff's employment and that Mr. McVay is presently the "Acting" Superintendent of Fleet Maintenance. Defendant, then, has not satisfied its burden of showing an absence of disputed material facts with respect to plaintiff's prima facie case of age discrimination.

*B.     The Pretext Analysis*

The court turns to whether defendant has met its burden to articulate a legitimate, nondiscriminatory reason for plaintiff's discharge. "This burden is one of production, not persuasion; it can involve no credibility assessment." *Carter v. Pathfinder Energy Servs., Inc.*, 662 F.3d 1134, 1149 (10th Cir. 2011) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000)). The Tenth Circuit has characterized this burden as "exceedingly light," and the court finds that defendant has carried it here. *See id.* According to defendant, Mr. Johnson decided to terminate plaintiff's employment because he concluded, based on the results of the investigation, that plaintiff had no intention of paying for the battery and that she finally paid for the battery on June 9, 2016 only because she had been summoned to a meeting to discuss the issue. The "Conduct Memorandum" authored by Mr. Johnson further indicates that plaintiff's failure to report the June 3, 2014 incident involving damage to her vehicle was considered in the

8

termination decision. The burden of proof, then, shifts back to plaintiff to show that defendant's proffered reasons are pretextual.[2]

Evidence of pretext "may take a variety of forms," including evidence tending to show "that the defendant's stated reason for the adverse employment action was false" and evidence tending to show "that the defendant acted contrary to a written company policy prescribing the action to be taken by the defendant under the circumstances." *Id*. at 1150 (quoting *Kendrick*, 220 F.3d at 1230). A plaintiff may also show pretext with evidence that the defendant had "shifted rationales" or that it had treated similarly situated employees differently. *Crowe v. ADT Servs., Inc.*, 649 F.3d 1189, 1197 (10th Cir. 2011). In essence, a plaintiff shows pretext by presenting evidence of "weakness, implausibility, inconsistency, incoherency, or contradiction in the employer's stated reasons, such that a reasonable jury could find them unconvincing." *Debord v. Mercy Health System of Kansas, Inc.*, 737 F.3d 642, 655 (10th Cir. 2013). In determining whether the proffered reason is pretextual, the court examines "the facts as they appear *to the person making the decision*, not as they appear to the plaintiff." *Id.* (emphasis in original). The court does not "ask whether the employer's proffered reasons were wise, fair or correct" but only whether "the employer honestly believed those reasons and acted in good faith upon those beliefs." *Id*. The court analyzes plaintiff's pretext evidence below.

---

[2] In its motion, defendant contends that plaintiff, in addition to establishing pretext, must "overcome the presumption that administrative officials act with honesty and integrity" and the presumption that government officials act in good faith. The cases relied upon by defendant involve public officials serving as adjudicators and are clearly distinguishable. *See, e.g., Withrow v. Larkin*, 421 U.S. 35, 47 (1975) (a person claiming bias on the part of an administrative tribunal "must overcome a presumption of honesty and integrity in those serving as adjudicators").

The primary reason offered by defendant for the termination decision is plaintiff's "theft" of company property. Specially, defendant contends that Mr. Johnson decided to terminate plaintiff's employment because he concluded, based on the results of the investigation, that plaintiff had no intention of paying for the battery. But plaintiff's evidence, viewed in the light most favorable to her, is sufficient to cast doubt on this reason. To begin, the investigation report does not conclude that plaintiff tried to steal the battery or that she had no intention of paying for the battery. The report concludes only that plaintiff took the battery with the intention of paying for it later, which was inconsistent with defendant's unwritten policy that arguably required an employee to pay for an item purchased from the warehouse prior to taking the item. The report sets forth specific details about plaintiff's efforts to pay for the battery prior to June 9, 2016, including a reference to the "first attempt to pay" on June 1, 2016 and a reference to an additional attempt to pay on June 7, 2016. Moreover, Mr. Johnson admitted in his deposition that the investigation report did not find that plaintiff had no intention of paying for the battery and he admitted that he knew that the report mentioned "a few calls" made to the battery vendor, presumably to make payment.

Plaintiff's evidence also supports an inference that Mr. Johnson, prior to the investigation, had already decided to terminate plaintiff's employment. Judy Woodruff, the individual who conducted the investigation for defendant, avers that Sam DeLeon advised her before she completed the investigation that Mr. Johnson wanted to terminate plaintiff's employment. Ms. Woodruff further testified in her deposition that, during the course of the investigation, she expressed to Mr. DeLeon that she had not been able to substantiate the idea that plaintiff had committed theft and that he told her that Mr. Johnson wanted to fire plaintiff so "we need to make

sure we find justification to do that."³ Thus, viewing the evidence in the light most favorable to plaintiff, a reasonable jury could find that Mr. Johnson did not in fact rely on the investigation report in deciding to terminate plaintiff's employment and that he did not really believe that plaintiff had no intention of paying for the battery. Plaintiff has cast sufficient doubt on this reason to survive summary judgment.

Defendant also states that Mr. Johnson, in making the termination decision, considered the fact that the investigation uncovered that plaintiff had failed to report a June 3, 2014 incident in which her company vehicle was damaged. On the Conduct Memorandum, this incident is deemed a violation of Rule 21 for the "Failure to report the unsafe operation and incident of a vehicle on Company business." But Mr. Johnson testified that the termination decision was based solely on the battery issue. Moreover, as noted above, there is evidence that Mr. Johnson had made the termination decision before the investigation ended in any event such that the discovery of the June 3, 2014 incident did not factor into his decision. Finally, plaintiff's evidence suggests that a first-time violation of Rule 21 would result in a warning and probationary period absent aggravating circumstances and no such circumstances are reflected in the record. To the extent, then, that defendant is asserting that it relied on a violation of Rule 21 in deciding to terminate plaintiff's employment, plaintiff has cast sufficient doubt on that reason to survive summary judgment.

---

³ Defendant objects to these statements on hearsay grounds. But the statements of Mr. Johnson and Mr. DeLeon are not hearsay because the alleged statements concerned a matter within the scope of their employment with defendant. *See* Fed. R. Evid. 801(d)(2)(D).

For the foregoing reasons, genuine issues of material fact exist concerning plaintiff's gender and age discrimination claims and those issues must be resolved by a jury.

## IV.     Retaliation

In the pretrial order, plaintiff asserts that defendant, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., terminated her employment in retaliation for plaintiff's opposing in good faith what she believed were discriminatory employment practices. As plaintiff has no direct evidence of retaliation, her claim is analyzed using the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Daniels v. United Parcel Serv., Inc.*, 701 F.3d 620, 638 (10th Cir. 2012). To state a prima facie case for retaliation, plaintiff must show that (1) she engaged in protected opposition to discrimination, (2) a reasonable worker would have considered the challenged employment action materially adverse, and (3) a causal connection existed between the protected activity and the materially adverse action. *Id*. If plaintiff presents a prima facie case of retaliation, then defendant must respond with a legitimate, nonretaliatory reason for the challenged action. *Parker Excavating, Inc. v. Lafarge W., Inc.*, 863 F.3d 1213, 1220 (10th Cir. 2017). If defendant satisfies this burden, plaintiff must show that defendant's reason was merely a pretext for retaliation. *Id*.

In its motion for summary judgment, defendant contends that plaintiff cannot establish the first and third elements of her prima facie case of retaliation. Specifically, defendant contends that plaintiff did not engage in protected activity because she raised only verbal concerns that were "more than adequately addressed" at the February 2, 2015 meeting between plaintiff and Mr. Johnson, nearly 18 months before her termination. To the extent that defendant is suggesting that

plaintiff was required to make a discrimination complaint in writing to satisfy the "protected activity" requirement, that argument is rejected. *See Hertz v. Luzenac Am., Inc.*, 370 F.3d 1014, 1015 (10th Cir. 2004) ("protected activity" can include voicing informal complaints to supervisors). And while defendant argues that the vast majority of plaintiff's concerns had nothing to do with alleged discrimination, defendant concedes that plaintiff raised concerns about her pay compared to the pay of male Superintendents employed by defendant. Finally, plaintiff's evidence demonstrates that plaintiff's concerns were not resolved on February 2, 2015 but that she continued to articulate complaints about potentially discriminatory pay practices. Mr. Johnson testified in his deposition that he and plaintiff discussed her assertion that male superintendents were making more money than her "many times" after the February 2, 2015 discussion and that plaintiff was raising concerns about her pay "over a span of time" including during 2016. He testified that he heard more from plaintiff about her dissatisfaction with her compensation than he did from any other employee. Plaintiff's interrogatory responses indicate that she met with Mr. Johnson about her compensation as late as April 28, 2016. The court, then, rejects defendant's argument that plaintiff's complaints were fully resolved by February 2015. And because plaintiff's evidence is sufficient to show that her concerns about potentially discriminatory pay practices were expressed to Mr. Johnson on an ongoing basis and not resolved at the time of her termination, she has satisfied her prima facie case.

The court turns, then, to the rest of the *McDonnell Douglas* framework. In support of her retaliation claim, plaintiff relies on the same "pretext" evidence that she does to support her discrimination claims. As described above in connection with plaintiff's discrimination claims, that evidence is sufficient to cast doubt on defendant's proffered reason for terminating plaintiff's

employment. For those same reasons, plaintiff's evidence is sufficient to survive summary judgment on her retaliation claim. Summary judgment on this claim is denied.

## V.     Equal Pay Act

Plaintiff asserts that defendant violated the Equal Pay Act (EPA) by paying her a lower salary than it paid her male counterparts for equal work. The EPA provides, in relevant part, that:

> No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex.

29 U.S.C. § 206(d)(1). To establish a prima facie case under the EPA, plaintiff has the burden of proving that she was performing work which was "substantially equal" to that of male superintendents considering the skills, duties, supervision, effort and responsibilities of the jobs; that the conditions where the work was performed were basically the same; and that male superintendents were paid more under such circumstances. *See Sprague v. Thorn Americas, Inc.*, 129 F.3d 1355, 1364 (10th Cir. 1997) (citing *Tidwell v. Fort Howard Corp.*, 989 F.2d 406, 409 (10th Cir. 1993) (citing *Corning Glass Works v. Brennan*, 417 U.S. 188 (1974))); *accord Riser v. QEP Energy*, 776 F.3d 1191, 1196 (10th Cir. 2015). If plaintiff establishes a prima facie case, then defendant "must undertake the burden of persuading the jury" that the pay differential was

premised on a factor other than sex. *See Sprague*, 129 F.3d at 1364 (citing *Tidwell*, 989 F.2d at 409).

Defendant contends that plaintiff cannot establish a prima facie case under the EPA because she cannot show that she was performing work substantially equal to the work performed by male superintendents.[4] Work is "substantially equal" for purposes of the EPA if it requires "equal skill, effort, and responsibility." 29 U.S.C. § 206(d)(1). "This determination turns on the actual content of the job—not mere job descriptions or titles." *Riser*, 776 F.3d at 1196. "What constitutes equal skill, equal effort, or equal responsibility cannot be precisely defined," but must take into consideration "the broad remedial purpose of the law." *Id.* (quoting 29 C.F.R. § 1620.14). Thus, "[i]nsubstantial or minor differences in the degree or amount of skill, or effort, or responsibility required for the performance of jobs will not render the equal pay standard inapplicable." *Id.* (quoting 29 C.F.R. § 1620.14).

In support of its motion, defendant argues that plaintiff's position has no comparator because no one else held the specific position held by plaintiff—Superintendent of Fleet Maintenance. As noted above, the "substantially equal" determination does not turn on job titles and, thus, this argument is summarily rejected. Defendant also asserts in conclusory fashion and without citation to the record that the duties and responsibilities of plaintiff's position as Superintendent of Fleet Maintenance were "substantially different" than those required for other superintendent positions. Defendant does not direct the court to any evidence concerning the

---

[4] Defendant also contends that plaintiff's EPA claim must fail because plaintiff was "highly compensated" for the work she performed and because she received pay increases over the course of her employment. Defendant offers no indication of how these facts undermine her claim or bear on the elements of her prima facie case. These arguments are rejected.

15

duties and responsibilities of the various superintendent positions and, accordingly, has not shown that it is entitled to summary judgment on this claim.  Because defendant has not met its initial burden on summary judgment of showing the absence of a genuine issue of material fact, defendant's motion is denied with respect to plaintiff's EPA claim.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's motion for summary judgment (doc. 72) is denied.

**IT IS SO ORDERED.**

Dated this 5th day of June, 2018, at Kansas City, Kansas.

s/ John W.Lungstrum  
John W. Lungstrum  
United States District Judge
